UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: July 12, 2010

———————————

No. 09 Civ. 7901 (RJS)

———————————

MICHAEL G. MCPHEE,
as administrator of the estate of Greg B. McPhee, deceased,

Plaintiff,

VERSUS

GENERAL ELECTRIC INTERNATIONAL, INC.,

Defendant.

———————————

MEMORANDUM AND ORDER
July 12, 2010

———————————

RICHARD J. SULLIVAN, District Judge:

Plaintiff Michael G. McPhee brings this action against Defendant General Electric International, Inc., seeking damages for the death of his brother, Greg McPhee (the "decedent"), which occurred in Israel in 2007. Now before the Court is Defendant's motion to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), as well as Plaintiff's request to amend the Complaint in the event that Defendant's motion is granted. For the reasons that follow, Defendant's motion is granted, and Plaintiff will be directed to submit a proposed amended complaint should he still wish to amend.

I. BACKGROUND

A. Facts[1]

Because the gravamen of the parties' dispute pertains to whether this action is governed by New York or Israeli law, the following factual discussion focuses largely

---

[1] The facts relevant to the resolution of Defendant's motion are drawn from the Complaint, the Declaration of Robert A. Smits dated May 10, 2010 ("Smits Decl."; Doc. No. 37), the transcript of the deposition of Robert A. Smits dated June 11, 2010 ("Smits Dep."; Doc. No. 40 Ex. 1 and Doc. No. 41 Ex. A), the declaration of Michael G. McPhee dated May 10, 2010 ("McPhee Decl."; Doc. No. 38 Ex. 1), and the decedent's employment agreement ("Agreement"; Doc. No. 40 Ex. 4).

on the connections between this litigation and New York.

### 1. The Parties

#### a. The Decedent

Prior to the 2006, the decedent resided in Arizona. (McPhee Decl. ¶ 3.) In 2006 and 2007, he resided with Plaintiff and his wife in Florida. (*Id.*) He has never resided in New York. (*Id.*)

#### b. Defendant

Defendant is a Delaware corporation with its principal place of business in Connecticut. (Smits Decl. ¶ 6.) It is registered with the New York Department of State as an active foreign business corporation. (Compl. ¶ 4.)

From its founding in 1962 until 1986, Defendant's headquarters were located in Manhattan. (Smits Decl. ¶ 7 & n.1.) In 2009, it made $341 million in sales in New York, paid $141 million in wages to employees stationed in New York, and maintained $57 million of machinery and equipment in New York. (*Id.* ¶ 10.) It also employs more than 1100 people in the state. (*Id.* ¶ 11.) Its Global Mobility Services Group, which is responsible for the employment agreements of international employees like the decedent, is based in Schenectady, New York. (*Id.* ¶ 12.)

Defendant's primary function is to facilitate the international deployment of employees of the General Electric Company, of which Defendant is a wholly-owned subsidiary. (*Id.* ¶¶ 13-14.) The General Electric Company is a New York corporation with its principal place of business in Connecticut. (*Id.* ¶¶ 17, 18 n.4.) Along with its corporate affiliates and subsidiaries, it employs more than 12,000 people in New York. (*Id.* ¶ 21(a).) The majority of its corporate board meetings are held in the GE Building, a seventy-story office tower located at 30 Rockefeller Plaza in Manhattan. (*Id.* ¶ 21(b).) Though questioning the relevance of the connections between the General Electric Company and New York, Plaintiff has described those connections as "very substantial." (Pl.'s Supp. Mem. at 5.)

### 2. The Employment Agreement

During the winter of 2007, Defendant assigned the decedent to perform water and commissioning services at a semiconductor fabrication facility in Kiryat Gat, Israel. (Compl. ¶ 5.) On February 19, 2007, the parties entered into an employment agreement providing that, in the event of a dispute between the parties, "the applicable law shall be the substantive and procedural law of New York." (Compl. ¶ 3.)

Payments to the decedent were administered by the General Electric Company's Global Employee Services group, which is headquartered in Schenectady, New York. (Smits Decl. ¶ 12; Smits Dep. at 128:11-129:4, *id.* at 180:22-181:4.) Payments were made through a Citibank located in New York. (*Id.* at 132:17-133:7.) Defendant agreed that during his employment, he would "abide by all policies, obligations and practices of General Electric Company, [of] GE International and of any GE affiliate to which [he] may be assigned." (Agreement at 2.)

The employment agreement was not negotiated. (Smits Decl. ¶ 26.) It was likely executed by the decedent in Florida and by counsel for Defendant in Connecticut. (*Id.*)

### 3. The Accident

On July 5, 2007, the decedent entered a water purification tank to conduct a visual inspection. (*Id.* ¶ 7.) The tank lacked

2

sufficient levels of oxygen, and the decedent suffocated and died. (*Id.* ¶¶ 8-11.)

### B. Procedural History

Plaintiff commenced this action by filing a complaint in New York Supreme Court on June 26, 2009. Plaintiff filed an amended complaint on September 1, 2009, and on September 2, 2009, he filed a Supplemental Demand clarifying that he was seeking damages well in excess of $75,000. Accordingly, on September 15, 2009, Defendant invoked this Court's diversity jurisdiction, *see* 28 U.S.C. § 1332, and removed the action to this Court.

On November 5, 2009, Defendant filed a motion to dismiss, arguing that when the choice-of-law clause was enforced and New York law was applied to this case, Plaintiff's claims were (1) barred by the exclusive Workers' Compensation remedy, and (2) untimely under the statute of limitations.

In response, Plaintiff argued that this action is governed not by New York law, but by Israeli law, for two reasons. First, Plaintiff contended that because the clause called for the application of "the substantive and procedural law of New York" without excluding New York's choice-of-law principles, the clause could be read to include New York's choice-of-law principles, which, Plaintiff argued, point to Israeli substantive law. Second, even if the clause called for the application of New York's substantive law, Plaintiff contended, this action had so few connections to New York that the clause was unenforceable. Plaintiff also sought leave to amend the Complaint to include additional claims in the event that the Court determined that New York law applied to this case. The initial briefing was fully submitted on November 23, 2009, and the Court heard oral argument on January 25, 2010.

On May 3, 2010, the Court issued an Order that partially resolved the parties' dispute. Specifically, it held that while the choice-of-law clause's selection of New York's "substantive and procedural law" could be theoretically read to incorporate New York's choice-of-law rules, such a reading was "fanciful" and had been rejected by other courts in the Circuit. The Court thus read the clause as calling for the application of New York's substantive law without regard to New York's choice-of-law rules, and directed the parties to address whether sufficient contacts existed between this litigation and New York for the clause to be enforced. Following the Court's receipt of affidavits on May 10, 2010, the Court on May 11, 2010 directed the parties to engage in limited discovery and submit supplemental briefing. That supplemental briefing was fully submitted on July 1, 2010.

## II. DISCUSSION

### A. Motion to Dismiss

#### 1. The Enforceability of the Choice-of-Law Clause

A federal court sitting in diversity applies the choice-of-law rules of the state in which it sits. *Klaxon Co. v. Stentnor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). In accordance with New York's choice-of-law rules, the question now before the Court is whether the parties' selection of New York's substantive law is enforceable.

Pursuant to New York's choice-of-law rules, as the Court has previously explained, "it is clear that in cases involving a contract with an express choice of law provision . . . a court is to apply the law selected in the contract as long as the state selected has sufficient contacts with the transaction." *Aramarine Brokerage, Inc. v. OneBeacon Ins. Co.*, 307 F. App'x 562, 564 (2d Cir. 2009) (internal quotation marks omitted);

3

*accord Hedgeco, LLC v. Schneider*, No. 08 Civ. 494 (SHS), 2009 WL 1309782, at *3 n.1 (S.D.N.Y. May 7, 2009) ("In New York, courts generally will enforce choice-of-law clauses in contracts 'so long as the chosen law bears a reasonable relationship to the parties or the transaction.'" (quoting *Welsbach Elec. Corp. v. MasTech N. Am., Inc.*, 859 N.E.2d 498, 500 (N.Y. 2006))).

Factors potentially relevant to the existence of sufficient contacts include "(1) the place of contracting; (2) the place of contract negotiation; (3) the place of performance; (4) the location of the subject matter of the contract; and (5) the domicile of the contracting parties." *Sabella v. Scantek Med., Inc.*, No. 08 Civ. 543 (CM) (HBP), 2009 WL 3233703, at *12 (S.D.N.Y. Sept. 25, 2009) (noting that these factors are relevant "even when the parties' contract contains a choice of law provision). Where the parties agree to litigate their claims in the forum of the state whose law they have chosen, that is another factor in favor of applying the law of that forum. *See Int'l Minerals & Res., S.A. v. Pappas*, 96 F.3d 586, 592 (2d Cir. 1996) (noting that England's sufficient contacts with the transaction included "its status as the forum of choice").

While the factors discussed above are relevant to the analysis of whether a reasonable relationship exists, a district court does not simply add up the factors to determine if a majority of them point to the selected body of law. As Judge Cote has cogently explained,

> It would be inappropriate to judge which state has the most significant contacts with this dispute and perhaps as a result of that analysis to disregard the choice-of-law provision in the Employment Agreement, since the choice of New York law satisfies the [reasonable-relationship standard], which is the more recent standard articulated by the New York courts and applied by the Second Circuit where a contract contains a choice-of-law provision. The analysis of which state has the most significant contacts with the dispute remains relevant in those circumstances in which the contract does not contain a choice-of-law clause.

*Cap Gemini Ernst & Young U.S. LLC v. Nackel*, No. 02 Civ. 6872 (DLC), 2004 WL 569554, at *4 (S.D.N.Y. Mar. 23, 2004), *aff'd*, 98 F. App'x 65 (2d Cir. 2004); *accord LaGuardia Assocs. v. Holiday Hosp. Franchising, Inc.*, 92 F. Supp. 2d 119, 127 (E.D.N.Y. 2000) (noting that while New York's choice-of-law rules generally point to the law of the state with the most significant contacts to the contract, "an exception to this general rule [exists] where . . . the contract contains a choice of law clause").

Because the choice-of-law clause in this case governed the decedent's international deployment, Plaintiff bears the burden of showing that it is unenforceable. *See Ruby v. Corp. of Lloyd's*, 996 F.2d 1353, 1362 (2d Cir. 1993) ("The Supreme Court . . . has indicated that forum selection and choice of law clauses are presumptively valid where the underlying transaction is fundamentally international in character." (citing *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972))); *Weiss v. La Suisse*, 154 F. Supp. 2d 734, 736 (S.D.N.Y. 2001) ("The burden of demonstrating that Swiss law does not govern rests with plaintiffs (who challenge the choice of law clause) and it is a heavy burden."); *Stamm v. Barclays Bank of N.Y.*, 960 F. Supp. 724, 729 (S.D.N.Y. 1997) ("As has already been discussed, the transactions here are fundamentally international in nature, and hence plaintiffs

4

bear the burden of establishing why the [forum selection and choice of law] clauses should not be enforced.").

In light of Defendant's substantial presence in New York, the fact that payments to the decedent originated in New York, the substantial connection that Defendant's parent company has with New York, and the fact that the parties elected to litigate this action in New York, Plaintiff has failed to meet his burden of showing that the choice-of-law clause is unenforceable. That some relevant factors also point to Florida, Connecticut, and Israel is not relevant, as Defendant has established that the litigation has a "reasonable relationship" to New York.[2]

2. The Applicability of the Choice of Law Clause

In its supplemental submission regarding the connections between this litigation and New York, Plaintiff added an argument that the choice-of-law clause, even if enforceable, is insufficiently broad to apply to extra-contractual tort claims. Because Plaintiff waited to raise this argument until the Court had reviewed the submissions on the motion to dismiss and authorized discovery and supplemental briefing on one specific narrow question, the argument has been waived. *Cf. Thomas v. Roach*, 165 F.3d 137, 146 (2d Cir. 1999) ("We need not consider this argument because it is raised for the first time in his reply brief."). This is the case notwithstanding Plaintiff's suggestion that "[f]rom the outset, Plaintiff has questioned whether the Assignment Letter . . . applies to the present wrongful death claims." (Pl.'s Supp. Mem. at 15.) While Plaintiff originally suggested that Defendant had failed to produce "a duly executed document evidencing the employment relationship" between the decedent and Defendant, Plaintiff said nothing about the scope of the choice-of-law clause.

Even if the Court were inclined to consider the argument, it is meritless, for the choice-of-law clause provides that it applies "[i]n the event of any dispute between the parties to this agreement or with respect to any claim arising from the employment relationship." (Agreement at 3.) While the Second Circuit has indicated that "tort claims are outside the scope of contractual choice-of-law provisions that specify what law governs construction of the terms of the contract," *Fin. One Pub. Co. v. Lehman Bros. Special Fin., Inc.*, 414 F.3d 325, 335 (2d Cir. 2005), it has also recognized that "a contractual choice-of-law clause could be drafted broadly enough to reach such tort claims." *Id*; *accord Krock v. Lipsay*, 97 F.3d 640, 645 (2d Cir. 1996) ("Under New York law, in order for a choice-of-law provision to apply to claims for tort arising incident to the contract, the express language of the provision must be 'sufficiently broad' as to encompass the entire relationship between the contracting parties."). Here, the express language of the clause goes far beyond indicating what law will govern the construction of the contract and instead governs the entire relationship resulting from the employment agreement.

---

[2] In considering the connections between Defendant's parent corporation and New York, the Court has rejected Plaintiff's contention that these connections are legally irrelevant. *Cf. Grecon Dimter, Inc. v. Horner Flooring Co.*, No. 02 Civ. 101 (GMU), slip op. at 5 (W.D.N.C. May 16, 2003) (finding that choice of German law was enforceable in part because "Plaintiff is a wholly-owned subsidiary of a German company"). The Court has also rejected Defendant's argument that the connections between GEII and New York are irrelevant to the specific employment agreement at issue in this case, as the law provides that a choice-of-law clause is enforceable "'so long as the chosen law bears a reasonable relationship to the parties *or* the transaction.'" *Hedgeco, LLC*, 2009 WL 1309782, at *3 n.1 (quoting *Welsbach Elec. Corp.*, 859 N.E.2d at 500) (emphasis added).

5

3. The Application of New York Law

When New York law is applied to this case, there is little genuine dispute between the parties that the Complaint should be dismissed. *See* Pl.'s Opp'n at 11 ("Were this case governed by New York substantive law Defendant might well prevail."); Oral Arg. Tr. Jan. 25, 2010, at 6:3-8 ("New York law, we can all agree, extinguishes any tort suit by an employee against his employer. . . . I don't think anybody has any dispute about what New York's law says about that."). The parties' agreement is unsurprising in light of the facts that (1) workers' compensation provides the exclusive remedy against employers by covered employees who have suffered unintentional injuries on the job, *see Fouchecourt v. Metro. Opera Ass'n*, 537 F. Supp. 2d 629, 631 (S.D.N.Y. 2008), (2) Plaintiff has explicitly disclaimed any theory predicated on an intentional tort (Letter from Jeffrey E. Michels to Court dated September 23, 2009), and (3) the statute of limitations for an intentional tort has expired, *see* N.Y. C.P.L.R. § 215(3) (providing a one-year statute of limitations for intentional tort claims). To the extent that Plaintiff has any other valid theories of recovery under New York law, he will need to raise them in an amended pleading, as discussed below.

B. Motion to Amend

In its opposition to Defendant's motion, Plaintiff included a request to amend the Complaint to include a claim that Defendant failed to provide workers' compensation benefits and coverage to the decedent and his estate. In evaluating a motion to amend, factors that are relevant to the exercise of the Court's discretion include (1) the presence of bad faith, dilatory motives, or undue delay on the part of the movant; (2) the potential for prejudice to an opposing party; and (3) whether the sought-after amendment would be futile. *See, e.g., In re PXRE Group, Ltd., Sec. Litig.*, 600 F. Supp. 2d 510, 523-24 (S.D.N.Y.2009), *aff'd*, 357 F. App'x 393 (2d Cir. 2009). In the absence of a proposed amended complaint, the Court is unable to evaluate whether amendment would be appropriately granted. Accordingly, Plaintiff will be directed to submit a formal motion to amend, including a proposed amended complaint, should he wish to do so.

III. CONCLUSION

For the reasons stated above, Defendant's motion to dismiss is granted. Should Plaintiff wish to amend his complaint, he shall make a motion to amend that includes a proposed amended complaint within two weeks of the date of this Memorandum and Order. Alternatively, should Plaintiff no longer wish to amend his Complaint, he shall submit a letter to that effect within two weeks of the date of this Memorandum and Order.

SO ORDERED.

RICHARD J. SULLIVAN
United States District Judge

Dated: July 12, 2010
New York, New York

6